IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **CHURCH MUTUAL INSURANCE COMPANY,** | ) CASE NO. 1:11CV2201 ) ) |
| **Plaintiff,** | ) ) |
| | ) JUDGE DONALD C. NUGENT |
| v. | ) ) |
| | ) **MEMORANDUM OPINION** |
| **FIRST UNITED PENTECOSTAL CHURCH OF PARMA, et al.** | ) **AND ORDER** ) ) |
| **Defendants.** | ) |

This matter is before the Court on Plaintiff Church Mutual Insurance Company's ("Church Mutual") Motion for Summary Judgment (ECF #57) on its Complaint against Defendants First United Pentecostal Church of Parma, Inc. ("First United"), Joshua O'Bannion, Robert O'Bannion, Charlene O'Bannion, McKenzie Scott, Vanessa Scott, Brian Scott, and Denise Nemeth.

The Scotts and Ms. Nemeth – who are some of the defendants here – are plaintiffs in two underlying state court lawsuits alleging that Joshua O'Bannion sexually abused McKenzie Scott and Denise Nemeth when they were minors. First United, Joshua O'Bannion, Robert O'Bannion, and Charlene O'Bannion are defendants in the underlying state court lawsuits.[1]

Church Mutual, the plaintiff in this federal action, issued insurance policies to First United. Coverage under the insurance policies may be triggered by an award of damages in the

---

[1] Only the Smith lawsuits names Charlene O'Bannion as a defendant.

Scott and Nemeth state court lawsuits.  Church Mutual thus brings this federal case against First United, the O'Bannions, the Scotts, and Ms. Nemeth, asking the Court to interpret the insurance policies, and seeking a declaration that $100,000 is the applicable limit of insurance under policies issued to First United for the two underlying state court lawsuits.  Specifically, Church Mutual seeks a declaration that:

1. The maximum obligation of Church Mutual to indemnify under all policies issued to First United for two lawsuits (the first brought by McKenzie, Vanessa, and Brian Scott, and the second brought by Denise Nemeth) is the $100,000 Each Claim Limit of insurance available under the Sexual Misconduct or Sexual Molestation Liability Coverage of policy number 0013701-02-371335, effective May 17, 2004 to May 17, 2007;

2. There is no coverage available under any insurance policy issued by Church Mutual to First United for any alleged defamation in the underlying lawsuit brought by the Scotts; and

3. There is no coverage available, and Church Mutual has no duty to indemnify, for any punitive damages awarded in the underlying lawsuits.

In its Motion for Summary Judgment, Church Mutual claims that it is entitled to a declaratory judgment as a matter of law.  Only McKenzie Scott, Vanessa Scott, and Brian Scott oppose Church Mutual's Motion for Summary judgment. The issues have been fully briefed and are ripe for review.  For the reasons set forth below, Church Mutual's Summary Judgment Motion is GRANTED in its entirety.[2]

---

[2] Church Mutual filed its complaint for declaratory judgment against the defendants. Subsequently, the Allstate Indemnity Company, which issued a homeowners' policy to the O'Bannions, moved to intervene. (ECF #20.)  After First United, the O'Bannions, and Nemeth failed to answer or otherwise appear in this matter, Church Mutual moved for default judgment against those defendants.  (ECF #s 36, 37, 38, 39, and 40.)  The Court granted Church Mutual's motions for default judgment.  (ECF #53.)  The Court

## A. **FACTS**

### 1. **The Scotts' Complaint**

MacKenzie Scott, Vanessa Scott, and Brian Scott filed a lawsuit against Joshua O'Bannion, Robert O'Bannion, and First United in the Cuyahoga County Court of Common Pleas, Case No. CV-11-747209 ("Scott lawsuit"). The Scotts' complaint alleged that "starting in the winter of 2006 and continuing until the spring of 2008," Joshua O'Bannion, a Church volunteer, intentionally, wantonly, willfully, and maliciously molested, sexually abused, and took advantage of McKenzie Scott while she was a minor. McKenzie Scott asserted claims against Joshua O'Bannion for assault and battery and intentional and negligent infliction of emotional distress. She also asserted a claim against First United and Robert O'Bannion, father of Joshua O'Bannion and pastor of First United. This claim alleged willful, wanton, reckless and/or negligence in hiring, retaining, training, and supervising Joshua O'Bannion. Vanessa Scott and Brian Scott alleged a claim for loss of parental consortium. The Scotts' complaint seeks compensatory damages, punitive damages, and attorneys' fees and costs.

### 2. **The Nemeth Lawsuit**

Denise Nemeth also filed a lawsuit against defendants Joshua O'Bannion, Robert O'Bannion, and First United in the Cuyahoga County Court of Common Pleas, Case No. CV-11-764161 ("Nemeth lawsuit"). The Nemeth complaint makes allegations nearly identical to those in the Scotts' complaint. Ms. Nemeth alleged that from "the winter of 2006 and continuing until

---

also granted Allstate's motion for summary judgment. (ECF #s 35 and 55.) Thus, judgment previously has been entered on all issues with respect to all parties, except the issues addressed herein, specifically, the Scotts' efforts to obtain additional insurance coverage under the policies Church Mutual issued to First United.

the spring of 2008," Joshua O'Bannion intentionally, wantonly, willfully, and maliciously molested, sexually abused, and took advantage of Ms. Nemeth while she was a minor. Ms. Nemeth's complaint also asserted claims against Joshua O'Bannion for assault and battery and negligent and intentional infliction of emotional distress. She also asserted a claim that Robert O'Bannion and First United were willful, wanton, reckless and/or negligent in hiring, retaining, training, and supervising Joshua O'Bannion. The Nemeth complaint seeks compensatory damages, punitive damages, and attorneys' fees and costs.

### 3. The Scotts' First Amended Complaint

After the two underlying lawsuits were filed, the Scotts were informed that the $100,000 Each Claim Limit under the Sexual Misconduct coverage in the policies applied to all alleged sexual misconduct by Joshua O'Bannion in both the Scott and Nemeth lawsuits. The Scotts then filed a first amended complaint. The first amended complaint added Charlene O'Bannion as a defendant and a new count for defamation. The defamation claim alleged that in September 2009 and thereafter the O'Bannions and First United made defamatory public defamatory statements about McKenzie Scott.

### 4. First United's Policies

Church Mutual issued to First United three multi-peril policies. The policies include various liability coverage sections typically found in general liability policies, including Bodily Injury coverage and Personal Injury coverage. In addition, the policies include Sexual Misconduct coverage. The first policy was issued to First United for the policy period from May 17, 2004 to May 17, 2007 (the "2004-07 Policy"). The second policy was issued to First United for the policy period May 17, 2007 to May 17, 2010; however, the policy was cancelled

for non-payment of premium effective August 17, 2008 (the "2007-08 Policy"). First United then obtained another policy beginning on October 30, 2008, but that policy was cancelled effective January 6, 2009 for non-payment of premium (the "2008-09 Policy"). Each policy includes Sexual Misconduct coverage subject to a $100,000 Each Claim Limit and a $300,000 aggregate limit.

The alleged sexual misconduct first occurred during the 2004-07 Policy. Accordingly, relevant provisions from the 2004-07 Policy are quoted below. The 2007-08 Policy provisions are substantively similar to the 2004-07 Policy under the Sexual Misconduct coverage. The policies also are substantively similar with respect to the Personal Injury coverage.

In relevant part, the 2004-07 Policy provides:

> **B. PERSONAL AND ADVERTISING INJURY LIABILITY COVERAGE**
>
> 1. Insuring Agreement.
>
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" . . . to which this insurance applies. . . .
>
>    \* \* \*
>
>    b. This insurance applies to:
>    (1) "Personal injury" only if caused by an offense arising out of the conduct of your business . . .
>
>    \* \* \*
>
>    But only if the offense was committed . . . during the policy period.
>
>    \* \* \*
>
> 2. Exclusions.
>
>    This insurance does not apply to:

5

  a. "Personal injury" or "advertising injury":

   \* \* \*

   (5) Arising out of any actual or alleged act of "sexual misconduct or sexual molestation"; including damages on account of any negligent hiring or transfer of, failure to supervise or failure to dismiss any employee or volunteer worker alleged to have committed any act of "sexual misconduct or sexual molestation"; or . . . .

 **C. SEXUAL MISCONDUCT OR SEXUAL MOLESTATION LIABILITY COVERAGE**

1. Except for the insurance provided by the Sexual Misconduct or Sexual Molestation Liability Coverage, the policy does not apply to nor do we have any duty to defend, any claim or suit seeking damages arising out of any actual or alleged act of "sexual misconduct or sexual molestation" including damages on account of any negligent hiring or transfer of, failure to supervise, or failure to dismiss any employee or volunteer worker alleged to have committed any act of "sexual misconduct or sexual molestation."

2. Insuring Agreement.

  a. We will pay those sums that the insured becomes legally obligated to pay as damages because of injury arising out of "sexual misconduct or sexual molestation" to which this insurance applies. . . .

   \* \* \*

3. Exclusions.

 This insurance does not apply to:

   \* \* \*

  h. Any exemplary or punitive damages.

   \* \* \*

**G. LIMITS OF INSURANCE**

1. The limits of Insurance shown in the Declarations Page and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits."

   * * *

6. Subject to 4. above [the Aggregate Limit], the Sexual Misconduct or Sexual Molestation Liability Coverage Each Claim Limit is the most we will pay for the sum of all damages under Sexual Misconduct or Sexual Molestation Liability Coverage because of all injury arising out of each claim.

   The term "Each Claim" means the following:
   Regardless of the number of acts of "sexual misconduct or sexual molestation," period of time over which such acts occur, or number of persons acted upon, all injury arising out of all acts of "sexual misconduct or sexual molestation" by the same person, or by two or more persons acting together, will be considered one claim, subject to the "each claim" Limit of Insurance in force at the time the first act covered by this or any other policy issued by us occurred.

   * * *

**I. DEFINITIONS**

   * * *

14. "Personal injury" means injury, other than "bodily injury" arising out of one or more of the following offenses:

    * * *

    d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or

    * * *

17. "Sexual misconduct or sexual molestation" is any activity which is sexual in nature whether permitted or unpermitted, including but not limited to,

> sexual assault, sexual battery, sexual relations, sexual acts, sexual activity, sexual handling, sexual massage, sexual exploitation, sexual exhibition, photographic, video or other reproduction of sexual activity, sexual stimulation, fondling, intimacy, exposure of sexual organs, lewd, or lascivious behavior or indecent exposure, fornication, undue familiarity, or unauthorized touching.

### B. LEGAL STANDARD

Summary judgment under Rule 56 is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show "that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed .R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists," and the court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001). When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

With regard to the non-moving party's obligation to set out specific facts showing a genuine issue for trial, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379-80 (6th Cir. 2007) (citation omitted).  Rather, "Rule 56 allocates that duty to the opponent of the motion, which is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Id.*

Accordingly, the ultimate inquiry is whether the record, as a whole, and upon viewing it in the light most favorable to the non-moving party, could lead a rational trier of fact to find in favor

8

of the non-moving party. *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87. The Court's inquiry, therefore, asks whether reasonable jurors could find by a preponderance of the evidence that the non-moving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### C. ANALYSIS

An insurance policy is a contract. Thus, rules of contract interpretation apply to insurance policies. *Westfield Ins. Co. v. Galatis,* 100 Ohio St. 3d 216, 2003-Ohio-5489, 797 N.E.2d 1256, ¶ 9. A court's role in interpreting a policy is to effectuate the intent of the parties as it appears from the policy language. *Id.* at ¶ 11. The insurance policy must be construed as a whole, and policy language must be given its plan and ordinary meaning. *Id*. When policy language is clear and unambiguous, a court must apply the language as written.

**1. Church Mutual's Indemnity Obligation is Limited to the $100,000 Each Claim Limit**

The Each Claim Limit provision is clear and unambiguous. The provision states:

> Subject to 4. above [the Aggregate Limit], the Sexual Misconduct or Sexual Molestation Liability Coverage Each Claim Limit is the most we will pay for the sum of all damages under Sexual Misconduct or Sexual Molestation Liability Coverage because of all injury arising out of each claim.
>
> The term "Each Claim" means the following:
> Regardless of the number of acts of "sexual misconduct or sexual molestation," period of time over which such acts occur, or number of persons acted upon, all injury arising out of all acts of "sexual misconduct or sexual molestation" by the same person, or by two or more persons acting together, will be considered one claim, subject to the "each claim" Limit of Insurance in force at the time the first act covered by this or any other policy issued by us occurred.

The unambiguous language makes plain that the Each Claim Limit ($100,000) applies when one person commits the sexual misconduct, even if the sexual misconduct consists of: (1) multiple sex acts; (2) against more than one person; and those acts were (3) committed over a period of time.

Both the Scott lawsuit and the Nemeth lawsuit allege sexual misconduct by Joshua O'Bannion and only Joshua O'Bannion committed over a two-to-three year period. Thus, the plain and clear terms of the Each Claim Limit clause dictate that the Each Claim Limit clearly applies to all acts of sexual misconduct committed by Joshua O'Bannion. The $100,000 Each Claim Limit applies to all acts of sexual misconduct committed by Joshua O'Bannion against McKenzie Scott and Denise Nemeth, regardless of the number of acts of sexual misconduct or the period of time over which such acts occurred.

At no time in their opposition to summary judgment do the Scotts dispute Church Mutual's claim that the $100,000 Each Claim Limit applies in this matter. Nor do they explicitly argue that the Each Claim Limit provision is ambiguous. Because the Scotts completely fail to address these issues in opposition to summary judgment, they concede that summary judgment is appropriate. *See Hays v. Bolton*, 2011 WL 53099 at *6 (N.D. Ohio Jan. 7. 2011) (granting summary judgment for Defendant and holding that Plaintiff conceded arguments not addressed in opposition to summary judgment); *Buckeye Resources, Inc. v. Duratech Indus. Int'l, Inc.*, 2011 WL 5190787 at *3, 5 (S.D. Ohio Oct. 31, 2011) (same).

Even if the Scotts' failure to address Church Mutual's arguments is not viewed as a concession, Church Mutual is entitled to summary judgment. Instead of addressing Church Mutual's arguments or explaining why the clear and unambiguous language in the Each Claim

10

Limit under the policy's Sexual Misconduct coverage is inapplicable, the Scotts claim that the policy language regarding the aggregate limit is ambiguous and should be construed in their favor. The aggregate limit terms state:

> The aggregate limits of insurance of this coverage part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the declarations page, unless the policy period is extended after issuance for an addition period of less 12 months. In that case, the additional period will be deemed last of the preceding period for purposes of determining limits of insurance.

Specifically, the Scotts claim that a reasonable mind can interpret the aggregate limit clause to read that an aggregate limit of $300,000 applies to each "annual period", which the Scotts claim consists of each of the three calendar years during which the abuse of MacKenzie Scott took place (2006, 2007, 2008). Thus, according to the Scotts, Church Mutual's maximum indemnity obligation is $900,000.

However, the Scotts have failed to explain why the aggregate limit applies at all in this case, and how the policy language under the Each Claim Limit possibly could be construed in the manner in which they suggest.[3] Indeed, the Each Claim Limit provision is essentially excised from the policy and rendered meaningless if the aggregate limit clause is read to apply here in the manner that the Scotts advocate. It is well-settled that when two interpretations can be given to a contract term, and one will make a provision meaningless while the other will give full force to all provisions, the latter interpretation must be adopted. *Abo v. Cleveland-Cliffs, Inc.*, 219 Fed. Appx. 419, 423 (6th Cir. 2007) (citing *Lightning Rod Mut. Ins. Co. v. Midwestern Indem. Co.*,

---

[3] The Scotts also fail to note that the Each Claim Limit does not include the "annual period" term that is included in the aggregate limit provision.

11

1987 WL 8425, *3 (Ohio Ct. App. 2987)). Thus, the Each Claim Limit clause provides the proper limit of Church Mutual's indemnity obligation.[4]

The application of the Each Claim Limit does not render coverage for aggregate limits "illusory," as the Scotts suggest. The aggregate limit applies, as is clear from the policy language, if two or more perpetrators independently engage in sexual misconduct that first occurs in the same policy period.[5] Under the policies, such a situation would trigger separate Each Claim Limits, which would be subject to the applicable aggregate limit. That is not the situation here. There is only one perpetrator – Joshua O'Bannion – who is alleged to have sexually abused both McKenzie Scott and Denise Nemeth. Because there is only a single perpetrator of sexual misconduct, a single $100,000 Each Claim Limit applies. The aggregate limit simply is not at issue under the facts present here.

Indeed, the Scotts' argument regarding the "illusory" coverage for aggregate limits has been rejected by courts considering other policies with similar each claim limits. *See TIG Ins. Co. v. Smart School*, 401 F. Supp. 2d 1334, 1344-45 (S.D. Fla. 2005). In *Smart School*, the court held that the sexual misconduct coverage aggregate limit in a policy, which also included an each claim

---

[4] The Ohio Supreme Court has recognized that there is nothing unusual about an insured and insurer agreeing that the insurer's liability for all damages sustained for related claims are subject to a monetary limit applicable for "each claim." *See Katz v. Ohio Ins. Guar. Ass'n*, 103 Ohio St. 3d 4, 2004-Ohio-4109, 812 N.E.2d 1266, ¶ 16.

[5] This situation could occur. For example, in some cases against Roman Catholic dioceses, it has been alleged that more than one priest independently engaged in sexual misconduct. *See, e.g.*, M. Carroll, et al., *Scores of priests involved in sex abuse cases*, Boston Globe at A1, January 31, 2002, available online at: http://www.boston.com/globe/spotlight/abuse/stories/013102_priests.htm (regardingthe Archdiocese of Boston).

limit similar to the policies here, was not illusory.[6] The policy in *Smart School*, like the policies here, contained aggregate limits for claims involving more than one perpetrator committing independent acts of sexual misconduct. *Id.* at 1345. Consequently, the court held that the aggregate limit was not illusory. *Id.*

For all of the reasons stated, the aggregate limit does not apply here, nor does it render the Each Claim Limit ambiguous. The policy language is clear that one Each Claim Limit applies under the Sexual Misconduct coverage because all of the claims in the Scott and Nemeth lawsuits relate to alleged sexual misconduct by one person – Joshua O'Bannion. Church Mutual's indemnity obligation for the underlying lawsuits is limited to the Sexual Misconduct coverage Each Claim Limit of $100,000.

### 2. No Coverage Exists for Defamation or Punitive Damages

In its Motion for Summary Judgment, Church Mutual argues several reasons why the Defendants here are not entitled to coverage for the defamation alleged in the underlying lawsuit filed by the Scotts, or to coverage for punitive damages awarded in the underlying suits. The Scotts did not respond to any of these arguments in their opposition to summary judgment.

Once again, the Scotts' lack of response impliedly concedes that summary judgment is appropriate on these issues. *Abo*, 219 Fed. Appx. at 423. In opposing a motion for summary judgment, it is the Scotts' burden as the non-moving party to put forth affirmative evidence beyond mere allegations or denials, which demonstrates a genuine issue of material fact for trial.

---

[6] As the *Smart School* court noted, one purpose of the each claim limit could be to limit the insurer's liability in the event that the insured employs a pedophile who might engage in sexual misconduct with more than one victim. *Id.* at 1349.

13

*See Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 390 (6th Cir. 2009) (citing *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389-90 (6th Cir. 2008)). The Court is not obligated to scour the record for evidence to support the opposition to summary judgment. *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990). Thus, Church Mutual is entitled to judgment as a matter of law that there is no coverage for the defamation alleged in the Scotts' complaint or for punitive damages.

### D. CONCLUSION

For the reasons stated, Church Mutual's Motion for Summary Judgment (ECF #57) is GRANTED. The maximum amount available under the policies issued to First United is the $100,000 Each Claim Limit under the Sexual Misconduct coverage.

IT IS SO ORDERED.

                                      s/Donald C. Nugent
                                      DONALD C. NUGENT
                                      UNITED STATES DISTRICT JUDGE

DATED: 8/20/2012